UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 24-31596 |
| | * | |
| MMA LAW FIRM, PLLC | * | CHAPTER 11 |
|     Debtor | * | |
| | * | JUDGE RODRIGUEZ |

| | | |
|---|---|---|
| LOUISIANA INSURANCE GUARANTY | * | ADV. P. NO. _____ |
| ASSOCIATION | * | |
| | * | |
| v. | * | |
| | * | |
| MMA LAW FIRM, PLLC | * | |

**COMPLAINT FOR DECLARATORY JUDGMENT DETERMINING THAT THE AUTOMATIC STAY DOES NOT PROHIBIT LOUISIANA INSURANCE GUARANTY ASSOCIATION FROM PAYING SETTLEMENT PROCEEDS TO FORMER CLIENTS OF MMA LAW FIRM, PLLC, OR ALTERNATIVELY, FOR RELIEF FROM THE AUTOMATIC STAY, AND OTHER ANCILLARY RELIEF**

**NOW INTO COURT**, through undersigned counsel, comes Louisiana Insurance Guaranty Association ("**LIGA**") who files this *Complaint for Declaratory Judgment Determining that the Automatic Stay does not Prohibit Louisiana Insurance Guaranty Association from Paying Settlement Proceeds to Former Clients of MMA Law Firm, PLLC, or Alternatively, for Relief from the Automatic Stay, and Other Ancillary Relief* (the "**Complaint**") against MMA Law Firm, PLLC ("**MMA**"). In support thereof, LIGA respectfully alleges as follows:

### SUMMARY OF ACTION

LIGA is obligated under Louisiana law to pay certain claims arising under certain insurance policies issued by insolvent insurers to the extent that the alleged damages constitute covered claims. Numerous insolvent insurers issued policies providing coverage for hurricane

property damage claims of certain former MMA clients. MMA has a long, well documented history of difficulties culminating with the instant bankruptcy and leaving it with no remaining attorneys licensed to practice law in Louisiana. In order to facilitate LIGA's continued settlement of covered claims, LIGA began holding in trust a portion of the settlement funds ("**Settlement Holdback Funds**") related to the property damage settlements with claimants who are alleged to be former clients of MMA. At the time of such settlements, MMA no longer represented such claimants, having no remaining attorneys licensed to practice law in Louisiana. Also at the time of such settlements, such claimants had not retained any new counsel. As part of the settlement, and in an abundance of caution due to uncertainly surrounding MMA, LIGA paid such claimants 75% of the agreed upon settlement amount, but held back the remainder as the Settlement Holdback Funds.

Upon information and belief, MMA has not perfected any lien or other interest in and to the Settlement Holdback Funds, or any portion thereof, and thus LIGA believes that the Settlement Holdback Funds are the property of the individual claimants, and not property of the estate within the auspices of 11 U.S.C. § 541(a)(1). LIGA seeks a declaration that payment of such amounts to claimants would not violate any of the provisions of 11 U.S.C. § 362(a). Further, LIGA seeks a declaration that it may hereafter pay all similarly situated property damage claimants in full.

If, however, this Court determines that MMA does hold an interest in the Settlement Holdback Funds, or any portion thereof, held by LIGA, LIGA believes cause exists to modify the automatic stay to allow LIGA to disburse the Settlement Holdback Funds to claimants, and to hereafter pay all similarly situated property damage claimants in full without violation of the provisions of 11 U.S.C. § 362(a).

**PARTIES**

1. Plaintiff, Louisiana Insurance Guaranty Association is a Louisiana juridical entity with its principal place of business at 2142 Quail Run Drive, Baton Rouge, Louisiana 70808.

2. Defendant, MMA Law Firm, PLLC is a Texas professional limited liability company.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b).

4. This Adversary Proceeding is commenced pursuant to Rule 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure ("**FRBP**").

5. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G), (K) and (O).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## FACTUAL BACKGROUND

7. LIGA is a private nonprofit unincorporated legal entity established by Louisiana law whose purpose is the payment of certain claims arising under certain insurance policies with a minimum delay and a minimum financial loss to claimants or policyholders due to the insolvency of a member insurer. LIGA is not an insurer, nor is it a successor to any member insurer or insolvent insurer. LIGA's powers, duties, rights, and responsibilities are set forth in the Louisiana Insurance Guaranty Association (the "**LIGA Law**")[1] and the limitations thereto are specifically pled herein as if copied in extenso. Specifically, LIGA is obligated, subject to the provisions of the LIGA Law, to pay covered claims which arise out of and are within the coverages and not in excess of the applicable limits of certain insurance policies issued by member insurer against

---

[1] *See*, La. Rev. Stat. §§ 22:2051, *et seq.*

whom an order of liquidation with a finding of insolvency has been entered by a final judgment of a court of competent jurisdiction.

8. In 2020 and 2021 multiple hurricanes made landfall in Louisiana, devastating many communities and causing significant property damages to Louisiana homeowners. In the aftermath of these hurricanes, many homeowners sought property insurance coverage and reimbursement from insurers under applicable homeowner's insurance policies. Certain homeowners held policies with companies that could not withstand the financial obligations for said property damages caused by the hurricanes and such insurers were placed into receivership and ultimately declared insolvent.

9. Under Louisiana's statutory scheme, LIGA becomes statutorily obligated to provide payment of certain covered claims arising under certain insurance policies which would have been brought against such insolvent insurers. Thus, many homeowners sought payment from LIGA for homeowners and other coverages provided under policies issued by such insolvent insurers and covered by the LIGA Law.

10. MMA, the Debtor herein, is a Texas based law firm which formerly employed certain attorneys licensed in Louisiana. MMA actively sought out clients in Louisiana[2] and filed numerous suits or otherwise pursued claims for hurricane damages.

11. In certain instances, MMA represented, or purported to represent, certain claimants seeking payment from LIGA. However due to shocking misconduct on the part of MMA resulting in sanctions and/or suspension of all of its attorneys licensed to practice in Louisiana, MMA no

---

[2] The propriety of MMA's client acquisition strategies and tactics is the subject of much consternation. *See*, *e.g.*, "*Franotovich v. Allied Trust Ins. Co.,*" Case No. 22-cv-2552, Doc-76, 2023 WL7005861 (E.D.La.) (detailing various misconduct of MMA in client acquisition); *see also*, "*Bowie v. Shelter Mut. Ins. Co, et al.*," 22-cv-04071, USDC, WDLA, Doc-33 (Magistrate Report and Recommendation denying MMA fees due to invalidity of attorney contract).

longer represents such former clients.[3] Indeed, upon information and belief, MMA has no attorneys licensed to practice law in Louisiana.

12. In some circumstances, claimants retained new counsel, but in others, claimants moved forward to press their claims without counsel. And with regard to the latter, LIGA, in accordance with its statutory obligations, adjusted the claims with such claimants and whenever possible reached settlement agreements with such claimants.

13. In the meantime, MMA sought bankruptcy protection by filing the above captioned chapter 11 bankruptcy case. The filing of the bankruptcy case resulted in the issuance of the automatic stay under 11 U.S.C. § 362. MMA subsequently sent LIGA a letter alleging that the automatic stay applied to a list of cases in which it believed it had an interest. (the "**MMA Letter**").[4] Unfortunately, the MMA Letter was replete with errors and omissions, adding to the confusion for LIGA. LIGA received no further communications from MMA subsequent to the MMA Letter.

14. In spite of the bankruptcy filing and MMA's inability to represent Louisiana clients, LIGA remained obligated to comply with its statutory duty to pay covered claims in accordance with the LIGA Law. Thus, LIGA has entered into settlement agreements with potential former clients of MMA, but due to uncertainty surrounding MMA, LIGA has withheld the Settlement Holdback Funds from such settlement payments. LIGA now seeks clarification from this Court as to the Settlement Holdback Funds and its procedures going forward.

---

[3]   *See*, *In re: McClenny Moseley & Associates PLLC*, 3:23-mc-00062-JDC, USDC, WDLA, Doc-1 (Memorandum Order suspending all MMA attorneys for ninety days.).

[4]   A copy of the letter dated April 25, 2024 is attached hereto as Exhibit "A". LIGA has determined that the list of cases attached to the MMA letter contains serious errors and omissions, containing duplicate claims, missing claim numbers, missing policy numbers, missing insolvent insurer names. Indeed, of the 3042 claims on the list, 343 could not be identified as LIGA claims or insolvent carrier claims, and approximately 140 were closed by the carriers prior to LIGA involvement.

15. At present, LIGA is holding in trust the Settlement Holdback Funds relating to settlement agreements with claimants who did not retain new counsel after the withdrawal or suspension of MMA.[5] To be clear, the Settlement Holdback Funds are funds reserved from settlement amounts with former MMA clients, or former purported MMA clients, who did not retain any new counsel after MMA withdrew or was suspended.

16. LIGA is unaware of any interest MMA has in the Settlement Holdback Funds. Indeed, MMA waived its claim in such funds, stating in numerous proceedings that it has no intention of pursuing fees from its former clients.[6]

17. Further, upon information and belief, MMA has forgone rights to claim interests in proceeds of settlement agreements obtained by its former clients from LIGA, having failed to perfect any lien rights in and to such settlement amounts. LIGA is unaware of the filing by MMA with an appropriate clerk of court as required by Louisiana Revised Statute § 37:218, nor is LIGA aware of the filing of an intervention within the suit such that any lien granted under that statute would be effective as to third-parties (such as LIGA).

## COUNT I – DECLARATORY JUDGMENT

### A. Declaratory Judgment Applicability

18. LIGA reavers and incorporates each allegation of Paragraphs 1 through 17 as if copied herein *in extenso*.

---

[5] A breakdown of the Settlement Holdback Funds is set out in Exhibit "B" hereto. Claimant names have been redacted. An unredacted list is available upon request.

[6] *See*, *Ricks v. Imperial Fire*, No. 23-2844, 2024 U.S. Dist. LEXIS 74793, at *5 (E.D. La. Apr. 5, 2024) ("MMA went on to represent that "… MMA does not intend to intervene in any cases pending in this Court to seek attorneys' fees or costs."); *Ricks*, Doc. No. 50 ("MMA maintains that there are no EDLA cases in which it intends to intervene or file liens to recover attorney's fees."); *Ricks*, Doc. No. 51 ("The Court finds that the multiple affirmative statements in multiple briefs filed with this Court that it could not seek to recover fees and/or costs from cases pending here constitutes a voluntary and knowing waiver of any right to do so.").

19. 28 U.S.C. § 2201 provides that a court may (subject to exceptions not relevant here) "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." As noted by the United States Fifth Circuit Court of Appeals, the statute permits those putative litigants who are threatened with sufficiently imminent liability to receive an "early adjudication" of their legal rights, so long as they otherwise satisfy federal subject matter jurisdiction. *Rowan Cos. v. Griffin,* 876 F.2d 26, 28 (5th Cir. 1989). The key is that a putative defendant has the chance for a federal court to weigh in *before* he engages in allegedly wrongful conduct. *See Hardware Mut. Cas. Co. v. Schantz,* 178 F.2d 779, 780 (5th Cir. 1949) ("The purpose of the Declaratory Judgment Act is to settle `actual controversies' *before they ripen into violations of law or a breach of some contractual duty.*" (emphasis added)).

20. As noted above, LIGA, to date, has not distributed the Settlement Holdback Funds to the claimants in light of the MMA bankruptcy filing and MMA Letter, but desires to do so as soon as authorized by this Court.

21. LIGA seeks to clarify its rights and obligations with regard to the applicability of the automatic stay, as referenced in the MMA Letter.[7] LIGA does not wish to disregard any applicable provisions of this Court's automatic stay, but must also comply with its statutory duties to claimants who made valid claims against LIGA pursuant to the LIGA Law. LIGA, thus, requires determination by this Court as to the applicability, if any, of the automatic stay to the disbursement of the Settlement Holdback Funds so that disbursement of such Settlement Holdback Funds does not "ripen into violations of law."

### B. The Automatic Stay

---

[7] LIGA is aware that MMA has sued multiple law firms for violation of the automatic stay due to fee disputes, and that this Court has entered a preliminary injunction in Adv. P. No. 24-3127 at Doc. 31, reference withdrawn, now pending in the District Court under Case No. 24-cv-2793.

22. Upon the filing of a bankruptcy case, 11 U.S.C. § 362 provides that certain actions are prohibited. Among such prohibited actions, subsection (a) of that statute provides that "a petition [for bankruptcy relief] . . . operates as a stay, applicable to all entities" prohibiting "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *See*, 11 U.S.C. § 362(a)(3).

23. The MMA Letter contained a cryptic reference to the possibility that the automatic stay issued in the MMA bankruptcy case has some undisclosed applicability to the resolution of claims held by putative former clients of MMA.

24. LIGA believes the only subsection of § 362 which could have any applicability to the payment by LIGA of claims made against it by third parties is subsection (a)(3) – actions to obtain possession of property of the estate or to exercise control over property of the estate.[8]

### C. Property of the Estate

25. LIGA asserts that the Settlement Holdback Funds are not subject to the Automatic Stay because they are not property of the estate.

26. 11 U.S.C. § 541(a)(1) provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."[9]

---

[8] Subsection (a)(1) prohibits continuation or commencement of an action or proceeding "against the debtor," which is clearly inapplicable here since any action or proceeding was against LIGA, not MMA, and did not involve a claim of MMA against LIGA. Similarly, LIGA is not attempting to enforce a pre-petition judgment against MMA nor the MMA bankruptcy estate. *See*, 11 U.S.C. § 362(a)(2). Nor is LIGA acting to create or perfect a lien against property of the bankruptcy estate or which would secure a claim against MMA which arose prior to the bankruptcy case. *See*, 11 U.S.C. §§ 362(a)(4), (5). LIGA is not attempting to collect or recover a claim against MMA and avers that it is not a creditor of MMA at all. 11 U.S.C. § 362(a)(6). In that same vein, LIGA is not attempting to effectuate a setoff against any claim it holds against MMA (because it does not have one). 11 U.S.C. § 362(a)(7). And finally, LIGA is not seeking to commence or continue a proceeding against MMA in the United States Tax Court. 11 U.S.C. § 362(a)(8).

[9] 11 U.S.C. § 541(a)(6) also may have applicability as that subsection provides that proceeds of property of the estate become property of the estate. However, it does not appear that any of the remaining subsections of § 541(a) have any import on the present matter.

27.    The term, "interests of the debtor in property" is not defined in the Bankruptcy Code.  Thus, in the absence of controlling federal bankruptcy law, the substantive nature of property rights is defined by reference to state law. *Butner v. United States,* 440 U.S. 48, 55-56, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

28.    MMA does not have any legal or equitable interest in the Settlement Holdback Funds, as the Settlement Holdback Funds are due to claimants, not MMA.  And LIGA's obligations pursuant to the LIGA Law are to claimants, not MMA.  While attorneys may have contractual rights against clients for services rendered,[10] attorneys do not, under Louisiana law, have rights to clients' recoveries unless attorneys have taken affirmative steps to create a lien or privilege on such recoveries.

29.    Under Louisiana law, an attorney may take an interest in a client's suit or claim in payment of his fee.  *See*, La. Rev. Stat. § 37:218(A).  Such an agreement must be in writing and between the client and the attorney.  *Id*.  The interest created under Louisiana law, however, is in the nature of a privilege (*i.e.*, a lien right).  *Id*. ("Such interest shall be a special privilege to take rank as a first privilege thereon"); *see also Saucier v. Hayes Dairy Prods., Inc.*, 373 So.2d 103, 117 (La. 1979) (on rehrg.).  What the Louisiana attorney lien statute does not do is authorize a

---

[10] Any right that MMA would have against its client for work performed on the client's behalf would be in the nature of an incorporeal right of action against the client rather than a lien right against a particular res being held by LIGA. And such a claim against a client would be like any other litigation claim a debtor possesses upon the filing of a bankruptcy case – property of the estate, but subject to liquidation through further proceedings.  However, such proceedings would not be against nor involve LIGA or the Settlement Holdback Funds.

While not dispositive to the instant matter, LIGA notes that it does not believe that MMA has any right to fees or costs from any former hurricane damage clients for several reasons.  First, MMA should be estopped since it has already stated in numerous pleadings that it does not intend to pursue such claims against clients.  Further, LIGA echoes the assertions made by other interested parties in this matter and related proceedings asserting that MMA cannot be entitled to any fees or costs in any hurricane claims because: (i) MMA's practices constituted the unauthorized practice of law in violation of the Louisiana Rules of Professional Conduct; (ii) MMA's egregious and unethical conduct renders its contingency engagements absolutely null in Louisiana; and/or (iii) MMA did no meaningful work entitling it to any fees.  *See Morris Bart, L.L.C.'s Motion for Summary Judgment*, Doc 19, Case No. 4:24-CV-446, United States District Court, Southern District of Texas.

transfer of the claim or any portion of the claim to the attorney such that the attorney and client would be co-owners of the claim or cause-of-action. *Id*.

30. Louisiana Revised Statute § 37:218(A) contains a further requirement to bind those who are obligors of the client. More in particularly, that statute states, "Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile."

31. In *Law Office of John D. Sileo v. Kruse*, 239 So. 3d 1057, 1063 (La. App. 5 Cir 02/21/18), the 5th Circuit Court of Appeal of Louisiana recognized that "where an attorney fails to record his contract in accordance with La. R.S. § 37:218, failure to record the contract results in a forfeiture of counsel's right to recover attorney fees against his client."

32. Further, in *Scott v. Kemper*, 377 So.2d 66, 70 (La. 1979), the Louisiana Supreme Court stated, "imposition of an obligation upon the client's obligor in the suit to retain settlement funds until determination of fee entitlement, is dependent upon the attorney's full compliance with R.S. 37:218, including the recordation of the contract as stipulated therein."

33. In other words, to prevent an obligor from disbursing settlement funds to the client in derogation of any lien rights of an attorney, that attorney must have filed the contract appropriately under the statute. Louisiana courts continue to apply *Scott* in the discharged attorney context. *See, e.g.*, *Breeden v. Crumes*, 103 So.3d 133, 136 (La.App. 4th Cir. 2012) citing *Hall v. St. Paul Fire & Marine Ins. Co.,* 868 So.2d 910, 912 (La.App. 5th Cir. 2/23/04).

34. Thus, to have an interest in the Settlement Holdback Funds held by LIGA (the putative client's obligor in this situation), MMA must have filed a copy of the client contract with either the clerk of court where the suit was pending or in the client's parish of domicile.

35. LIGA does not believe MMA has complied with the requirements of Louisiana Revised Statute § 37:218(A) with regard to any of the matters listed on Exhibit "B" attached. And if it has not, MMA has no legally cognizable interest in the Settlement Holdback Funds. As such, the disbursement of the Settlement Holdback Funds would not offend or violate the automatic stay under 11 U.S.C. § 362(a)(3) because LIGA is not seeking to assert possession or control over property of the estate.

36. In light of the foregoing, LIGA is entitled to a judgment declaring that it may disburse the Settlement Holdback Funds to appropriate claimants in satisfaction of settlement agreements between LIGA and such claimants without violating the automatic stay, and that LIGA may hereafter pay all similarly situated property damage claimants in full.

## COUNT II – (PLEADED IN THE ALTERNATIVE)
## RELIEF FROM THE AUTOMATIC STAY

37. LIGA reavers and incorporates each allegation of Paragraphs 1 through 36 as if copied herein *in extenso*.

38. Alternatively, and only if this Court determines that the Settlement Holdback Funds or any portion thereof constitute property of the MMA estate, LIGA seeks a lifting or modification of the automatic stay to allow it to disburse the Settlement Holdback Funds to appropriate claimants.

39. The automatic stay under 11 U.S.C. § 362 provides an honest debtor with an opportunity to protect his assets for a period of time by freezing the collection of debts and other actions, allowing the debtor to address their debts through the bankruptcy process.[11] However, the

---

[11] *Laguna Assocs. Ltd. Pshp. v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. Ltd. Pshp.)*, 30 F.3d 734, 737 (6th Cir. 1994).

protections of the automatic stay are not absolute, and courts have found that it should not extend to debtors who have acted in bad faith or abused the bankruptcy system.[12]

40.	11 U.S.C. § 362(d)(1) provides authority for the bankruptcy court to lift or modify the automatic stay "for cause":

> *(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—*
>
>> *(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;*

41.	"Cause" is not defined under 11 U.S.C. § 362(d); rather, courts have noted that this lack of definition affords flexibility to the bankruptcy courts to determine "cause" on a case-by-case basis and through an examination of the totality of the circumstances.[13] Cause for purposes of lifting the automatic stay may be equitable in nature.[14]

42.	11 U.S.C. § 362(d)(1)'s 'for cause' language authorizes the court to determine whether, with respect to the interests of a creditor seeking relief, a debtor has sought the protection of the automatic stay in good faith.[15]

---

[12] See, *Krueger v. Torres (In re Krueger)*, 812 F.3d 365, 373 (5th Cir. 2016). See also, *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).

[13] *Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 253 (5th Cir. 2006); *In re Tonthat*, No. 07-30315-H3-13, 2009 Bankr. LEXIS 2165, at *1 (Bankr. S.D. Tex. Aug. 7, 2009); *Rashad v. Kelly (In re Rashad)*, Nos. 10-34549-H3-11, 10-3362, 2010 Bankr. LEXIS 4439, at *7 (Bankr. S.D. Tex. Dec. 2, 2010).

[14] See, *In re Little Creek Dev. Co.*, at 1072.

[15] A number of courts, including the 5th Circuit (*Carolin Corp. v. Miller*, 886 F.2d 693, 699 (4th Cir. 1989). have identified several relevant indicators of bad faith by organizational debtors, including

  (1)  the debtor has one asset;
  (2)  the pre-petition conduct of the debtor has been improper;
  (3)  there are only a few unsecured creditors;

43. An examination of the specific facts and the totality of the circumstances reveals compelling grounds for modification of the automatic stay here.

44. First, and as discussed above, the MMA's pre-petition misconduct led to its inability to litigate its former clients' claims and ultimately led to this bankruptcy proceeding.

45. The protections afforded under Chapter 11 are intended to assist debtors in genuine financial distress who seek a fresh start.[16] These protections should not be applied where questions arise concerning the debtor's pre-petition conduct, particularly where that conduct may affect the debtor's claimed interest in contingency fees.

46. As has been recognized by the Eastern and Western District Courts of Louisiana, MMA's bad faith and dishonesty in procuring and representing clients should preclude any discussion of entitlement to fees.[17] Certainly, the Bankruptcy Code does not cleanse MMA's actions.

47. For instance, in *In Re: McClenny Moseley & Associates PLLC,* Judge Cain for the Western District held that "MMA is not entitled to any attorney fees, costs and/or expenses either pending in this Court or in the list herein attached as Exhibit 'A.'" because "MMA's clear solicitation of clients voided any contract of representation" and "their continued unethical

---

(4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court;
(5) the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;
(6) the filing of the petition effectively allows the debtor to evade court orders;
(7) the debtor has no ongoing business or employees; and
(8) the lack of possibility of reorganization.

[16] *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985). *See, Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S. Ct. 654, 659 (1991).

[17] *Sylvester Bowie v. Shelter Mutual Insurance Co., et al.,* No. 1:22-cv-04071 (W.D.L.A. Oct. 5, 2023) (Doc. No. 33).

behavior … nullifies any ownership, fee interest, and/or property interest of MMA, its attorneys or any related entity or third party."[18]

48. In the Eastern District, Chief Magistrate Judge North recognized that "[s]ince first appearing in this District less than a year ago, [MMA] and its attorneys … have engaged in a pattern of misconduct on a scale likely never before seen here. The record in these cases establishes that they have undertaken a brazen, multi-faceted campaign to enrich themselves with ill-gotten contingency fees paid to them by unwitting insurance companies ostensibly on behalf of named insureds that they and their firm did not represent."[19] He further provided that he had been a lawyer for 25 years and has "never seen a clearer or more shameless series of violations of Federal Rule of Civil Procedure 11 and the Rules of Professional Conduct than what confronts us here."[20]

49. Similarly, in several cases in the Western District, United States Magistrate Judge Kathleen Kay held that "the conduct that led to MMA's dismissal is so egregious that it more than offsets any value it provided to [its client]."[21] Judge Kay further emphasized that "MMA [] acted with so little regard for the rules of ethics and professional conduct, has been so reckless in the management of its affairs, and has so thoroughly weighed itself down with claims of dubious validity, that it deprived itself of the ability to provide any meaningful service to plaintiffs with legitimate claims."[22]

---

[18] *In Re: Mcclenny Moseley & Associates PLLC*, No. 3:23-mc-00062 (W.D. L.A. Aug. 22, 2023) (Doc. No. 37).

[19] *Franatovich v. Allied Trust Insurance Company,* No. 2:22-cv-02552 (E.D.L.A. March 16, 2023) (Doc. 76).

[20] *Id.*

[21] *Sylvester Bowie*; *Trahan v. Allstate Vehicle & Property Insurance Co,* No. 2:22-cv-03604 (W.D.L.A. Oct. 5, 2023) (Doc. No. 26); *Jones-Bell v. Imperial Fire & Casualty Insurance Co*, No. 2:22-cv-03855 (W.D.L.A. Sept. 22, 2023) (Doc. No. 45); *Theriot v. State Farm Fire & Casualty Co et al*, No. 2:22-cv-04083 (W.D.L.A. Sept. 22, 2023) (Doc. No. 43); *Duplantis v. Underwriters at Lloyds London*, No. 6:22-cv-03388 (W.D.L.A. Oct. 5, 2023) (Doc. No. 31).

[22] *Id*.

50. Indeed, LIGA echoes the assertions made by other interested parties in this matter and related proceedings that MMA cannot be entitled to any fees or costs in any hurricane claims because: (i) MMA's practices constituted the unauthorized practice of law in violation of the Louisiana Rules of Professional Conduct; (ii) MMA's egregious and unethical conduct renders its contingency engagements absolutely null in Louisiana; and/or (iii) MMA did no meaningful work entitling it to any fees.[23]

51. As a result of the Automatic Stay, MMA's former clients have been unable to access the full value of their settlements with LIGA. The Automatic Stay should not operate as some kind of shield behind which MMA may hide its inequities or to otherwise prevent LIGA from performing its public mission.

52. Second, the Debtor has no ongoing business or employees.[24]

53. At a hearing held before this Court on July 9, 2024, MMA's representative, Mr. Mosely, admitted he is the only attorney currently working for the MMA.[25] Furthermore, upon information and belief, MMA has no attorneys licensed to practice law in Louisiana, and thus cannot lawfully practice or collect fees arising from Louisiana-based legal matters.

54. Finally, MMA has stated on numerous occasions that it has no interest or plans to pursue clients as to any fee dispute.[26] Numerous courts have recognized that MMA is judicially estopped from claiming otherwise at this point.

---

[23] Discussed in *Morris Bart, L.L.C.'s Motion for Summary Judgment*, Doc 19, Case No. 4:24-CV-446, United States District Court, Southern District of Texas.

[24] *See*, Doc. No. 201, pp. 14 of 100.

[25] *Id*.

[26] "MMA has knowingly and completely waived its rights to intervene or otherwise seek to recover fees and/or costs in this or any other lawsuit pending in this District." *See*, *Foskey et al v. American Modern Property and Casualty Insurance Company*, No. 2:23-cv-05316 (E.D.L.A. Dec. 12, 2024) (Doc. No. 21); *Ricks v. Imperial Fire and Casualty Insurance Company*, No. 2:23-cv-02844 (E.D.L.A. April 5, 2024) (Doc. No. 51).

55. Considering the foregoing, if this Court determines that the Settlement Holdback Funds or any portion thereof are property of the MMA bankruptcy estate, LIGA is alternatively entitled to a judgment modifying or lifting the automatic stay to allow LIGA to disburse the Settlement Holdback Funds to all applicable claimants, and to hereafter pay all similarly situated property damage claimants in full, without violation of the provisions of 11 U.S.C. § 362(a).

WHEREFORE, plaintiff, Louisiana Insurance Guaranty Association prays that, after due proceedings, this Court issue a judgment as requested, and against Debtor:

A. Declaring that: (a) the Settlement Holdback Funds are not property of the estate within the auspices of 11 U.S.C. § 541(a)(1) and that payment of such amounts by LIGA to claimants would not violate any of the provisions of 11 U.S.C. § 362(a); (b) LIGA may hereafter pay all similarly situated property damage claimants in full.

B. In the alternative, and only if this Court determines that the Settlement Holdback Funds or any portion thereof are property of the estate, then modifying or lifting the automatic stay to allow LIGA to disburse the Settlement Holdback Funds to claimants; and (b) to hereafter pay all similarly situated property damage claimants in full, without violation of the provisions of 11 U.S.C. § 362(a).

C. Such other and further relief to which they may be entitled in law and equity.

~~Signature Page to Follow~~

Respectfully submitted,

**STEWART ROBBINS BROWN & ALTAZAN, LLC**

By: */s/ William S. Robbins*
Paul Douglas Stewart, Jr. (La. Bar # 24661, admitted to SDTX, Fed ID # 432642)
dstewart@stewartrobbins.com
William S. Robbins (TX Bar # 24100894)
wrobbins@stewartrobbins.com
Brandon A. Brown (TX Bar # 24104237)
bbrown@stewartrobbins.com
301 Main Street, Suite 1640
Baton Rouge, Louisiana 70801
225.231.9998 (Telephone)
225.709.9467 (Facsimile)

***Counsel for Louisiana Insurance Guaranty Association***