IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 24-31596 |
| MMA LAW FIRM, PLLC | § § | |
| DEBTOR | § § § | |
| LOUISIAN INSURANCE GUARANTY ASSOCIATION<br>Plaintiff<br>v. | § § § § § | ADVERSARY NO.<br>25-03429 |
| MMA LAW FIRM, PLLC | § § § | |
| Defendant | | |

## MMA LAW FIRM, PLLC'S MOTION TO DISMISS THE CLAIMS OF LIGA FOR LACK OF SUBJECT MATTER JURISDICTION AND ITS ANSWER AND COUNTERCLAIM TO LOUISIANA INSURANCE GUARANTY ASSOCIATIONS' COMPLAINT

MMA Law Firm, PLLC (**"Debtor"** or **"MMA"**), files this Motion To Dismiss, and Answer and Counterclaim (the **"Answer"**) to the Complaint (the, **"Complaint"**) filed by Louisiana Insurance Guaranty Associations' (**"LIGA"**), and respectfully shows the Court as follows:

**Summary of Facts and Relief Requested**

In 2023, the Louisiana Department of Insurance (the **"LDI"**), through its Commissioner, issued a cease-and-desist order against MMA and sanctioned it $500,000. This aggressive action appears motivated not by regulatory necessity, but by the fact that MMA had already filed thousands of lawsuits against insurance companies on behalf of its clients, and was on pace to file thousands more, following an unprecedented period in which four hurricanes struck Louisiana within a 12-month span.

These storms caused widespread devastation and exposed systemic underpayment and mishandling of claims by insurance companies across the state of Louisiana. MMA's successful litigation campaign threatened to hold the entire insurance industry in Louisiana accountable on a massive scale.

The mounting legal pressure posed an existential threat to nearly all insurance companies, many of whom were already insolvent or nearing collapse. The ripple effect of those liabilities would have landed squarely on LDI, which failed to rein in industry abuses, which is legally obligated to pay claims on behalf of failed insurers.

In what appears to be an effort to protect the insurance industry and suppress exposure of its failures, LDI retaliated against MMA by issuing an unlawful cease-and-desist order and imposing baseless financial sanctions which were reversed on appeal. However, prior to being reversed, the damage was done: MMA was forced into bankruptcy, in part due to the LDI's retaliatory campaign and its chilling effect on MMA's operations.

After MMA's bankruptcy, LIGA stepped in to settle thousands of the lawsuits MMA had filed on behalf of its clients, yet LIGA unilaterally withheld 25% of MMA's earned attorney fees, despite no client objection and no substitute counsel taking over the cases. Rather than act as a neutral statutory administrator, LIGA filed this adversary proceeding seeking a ruling that the withheld funds are not part of the bankruptcy estate and should be distributed to clients who have not even requested them.

LIGA claims it fears potential liability for violating the automatic stay, yet it refuses MMA's reasonable proposal to deposit the funds into the Bankruptcy Court's registry, a simple, court-supervised solution that would eliminate any such risk and would provide LIGA with a release to any fears of violating the automatic stay.

In its own pleadings, LIGA describes itself as "a private nonprofit unincorporated legal entity established by Louisiana law whose purpose is the payment of certain claims arising under certain insurance policies with a minimum delay and a minimum financial loss to claimants or policyholders due to the insolvency of a member insurer." LIGA further claims that it "is not an insurer, nor is it a successor to any member insurer or insolvent insurer." This self-described role implies a duty of neutrality and efficiency, yet LIGA has cast itself not as a neutral facilitator, but as an adversary advancing the same retaliatory agenda launched by the LDI against MMA.

LIGA is now using the bankruptcy process as a weapon to deprive MMA of funds it earned and is lawfully entitled to, in direct violation of the Bankruptcy Code. The very same funds that MMA needs to pay the creditors of this estate.

Not only is LIGA withholding nearly $1 million owed to MMA, LIGA is also interfering with MMA's ability to receive postpetition funds from other attorneys. After MMA filed for bankruptcy, LIGA began conditioning settlement or mediation of client claims with successor counsel on the removal of MMA from fee participation, despite MMA's equitable and contractual interests in those fees. This conduct, including direct communications with successor counsel, constitutes an attempt to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3), and an act to pressure third parties to deprive MMA of prepetition claims. These actions have disrupted the administration of the estate and impaired MMA's ability to recover assets, and thus form the basis for relief under both § 362 and/or § 105(a).

MMA denies that LIGA is entitled to any of the relief it seeks in this proceeding. To the contrary, MMA asserts a counterclaim for the intentional violation of the automatic stay and a counterclaim that the funds LIGA admits to holding are property of the bankruptcy estate under 11 U.S.C. § 541 and must be immediately turned over to the estate under 11 U.S.C. § 542. LIGA

has no legal or equitable right to retain these funds, and its continued refusal to release them constitutes a violation of the Bankruptcy Code.

## I. MOTION TO DISMISS

1. LIGA was created in 1970 as a private, nonprofit unincorporated legal entity to provide a limited safety net when member insurance companies become insolvent. https://www.laiga.org/history/covered-by-liga/.

> As a statutorily created entity, LIGA is liable for only those obligations provided by the Louisiana Insurance Guaranty Association Law ("LIGA Law"). La. R.S. 22:2051, *et. seq*. Under LIGA Law, when an insurer is determined to be insolvent, LIGA is deemed to be the insurer to the extent of its obligation on pre-insolvency covered claims and has all the rights, duties, and obligations of the insolvent insurer as if that insurer had not become insolvent. LA. STAT. ANN. §§ 22:2058(A)(1)(a), (A)(2). In addition, LIGA is obligated to the extent of covered claims arising after the determination of the insurer's insolvency but arising prior to the expiration of thirty days after the date of such determination of insolvency. *Id* § 22:2058(A)(1)(a)(i). A covered claim is any unpaid claim by or against the insured which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which LIGA Law applies. Id. § 22:2055(6).

*Matherne v. Huntington Ingalls Inc.*, No. 22-2656, 2022 U.S. Dist. LEXIS 196329, at *13-14 E.D. La. 2022)

2. A litigant must ordinarily "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *United States Dep't of Labor v. Triplett*, 494 U.S. 715, 721 (1990) (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)); see also 33 *Charles Alan Wright & Arthur R. Miller*, FEDERAL PRACTICE AND PROCEDURE § 8343, at 1 (2nd ed. April 2019 Update). ("The problem of third-party standing arises where a plaintiff seeks to enforce the legal rights of some third party not before the court.").

3. Here, LIGA fails to assert it's own rights, seeking to have the claims/defenses of the

insureds to payment of contractual fees litigated on its own behalf.

4. LIGA fails to have third-party standing to assert those claims, being a stranger to the contracts between MMA and their clients/former clients. LIGA can point to no concrete injury. Any attorney fee award or payment runs solely between the insured and her lawyer; the insurer neither pays it nor suffers any legal detriment if it is higher or lower. LIGA pays the same no matter the outcome. The risk of allegedly "excessive" fees is squarely on the party who contracted for them (the insured), not on a third-party payor who has already satisfied its own obligations – payment of the insurance claim.

5. With no standing to assert the claims/defenses of the third-party insureds, this Court lacks jurisdiction to entertain those claims and they must be dismissed.

## II. ANSWER TO LIGA'S ALLEGATIONS

MMA responds to the allegations in the Complaint, corresponding to the numbered paragraphs therein, as follows:

**"SUMMARY OF ACTION" SECTION**

In response to the "Summary of Action" section of the Complaint, MMA lacks sufficient knowledge or information to admit or deny the following allegations and therefore denies them:

a) LIGA's obligations;

b) Whether insolvent insurers issued policies for MMA's former clients;

c) LIGA's actual reason for retaining the Settlement Holdback Funds;

d) The timing of the settlements;

e) Whether MMA's former clients retained new counsel;

f) Whether and to what extent LIGA withheld funds;

g) The amounts allegedly paid by LIGA to MMA's former clients;

h) LIGA's beliefs regarding MMA's entitlement to any funds; and

i) The basis for LIGA's retention of the Settlement Holdback Funds.

MMA admits that LIGA seeks the relief specified in the Summary of Action section of the Complaint based solely on the causes of action alleged therein. MMA denies that LIGA is entitled to any such relief and expressly opposes the same.

**PARTIES**

6. MMA is unable to admit or deny the allegations contained in Paragraph 1 of the Complaint due to insufficient knowledge or information and therefore denies them.

7. MMA admits the factual allegations contained in Paragraph 2 of the Complaint.

**JURISDICTION AND VENUE**

8. MMA admits the allegations contained in Paragraph 3 of the Complaint.

9. MMA admits that this adversary proceeding is brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure. However, MMA denies that it is properly brought under Rule 7001(2) or 7001(9), as Rule 7001 is organized by lettered subsections (a) through (j), not numbered ones, as alleged in Paragraph 4 of the Complaint.

10. MMA admits that this adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and further states that other subsections of the statute may also apply as referenced in Paragraph 5 of the Complaint.

11. MMA admits that venue is proper as alleged in Paragraph 6 of the Complaint.

**FACTUAL BACKGROUND**

12. MMA admits that LIGA's powers, duties, rights, and responsibilities are established by statute. MMA lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 7 and therefore denies them.

13. MMA admits the first sentence of Paragraph 8—that in 2020 and 2021, multiple hurricanes made landfall in Louisiana, devastating many communities and causing significant property damage. MMA lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 8 and therefore denies them.

14. Paragraph 9 contains legal conclusions concerning LIGA's statutory obligations, to which no response is required. To the extent a response is deemed necessary, MMA lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 9 and therefore denies them.

15. MMA denies that it pursued claims for hurricane damages. MMA admits the remaining factual allegations in Paragraph 10 of the Complaint.

16. MMA admits that it represented clients who later sought payment from LIGA. MMA admits that attorneys affiliated with MMA had their Louisiana licenses suspended for a limited period, and that MMA currently has no attorneys licensed to practice law in Louisiana. MMA denies the remaining allegations in Paragraph 11, including the stated reasons for the license suspensions.

17. MMA admits that former clients retained new counsel and that others proceeded without new counsel. MMA lacks sufficient knowledge or information to admit or deny whether LIGA proceeded in accordance with its statutory obligations as alleged in Paragraph 12 and therefore

denies that allegation.

18. MMA denies that the letter it sent (the "MMA Letter") was replete with errors and omissions. MMA lacks sufficient knowledge or information to admit or deny whether LIGA was confused by the letter. MMA admits that no further communications were sent to LIGA, that MMA filed for bankruptcy, and that the automatic stay under 11 U.S.C. § 362 applies, as alleged in Paragraph 13, and denies the remaining factual allegations.

19. MMA admits that LIGA is obligated to comply with statutory duties in accordance with the LIGA law. MMA lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 14 and therefore denies them. MMA further states that the suspensions of Louisiana attorney licenses were for a limited time period that has since expired.

20. MMA admits that LIGA is holding in trust the Settlement Holdback Funds related to settlement agreements with MMA's former clients who did not retain new counsel. MMA denies the remaining allegations in Paragraph 15 of the Complaint.

21. MMA lacks sufficient knowledge or information to admit or deny what LIGA may or may not be aware of regarding MMA's interests and therefore denies this and any remaining allegations in Paragraph 16.

22. MMA lacks sufficient knowledge or information to admit or deny what LIGA knows or believes. MMA specifically denies the assertion in Paragraph 17 of the Complaint that it has forfeited, waived, or otherwise lost any rights to claim an interest in the proceeds of settlement agreements obtained by its former clients.

COUNT 1 – DECLARATORY JUDGMENT

23. MMA denies the allegations in Paragraph 18 of the Complaint. MMA objects to the

incorporation by reference of Paragraphs 1 through 17 in a single paragraph, as such practice violates the pleading standards under the Federal Rules of Civil Procedure by improperly lumping numerous allegations and legal theories together. MMA reasserts and incorporates its responses to Paragraphs 1 through 17 above.

24. Paragraph 19 contains no factual allegations requiring a response. To the extent a response is required, MMA denies that LIGA is entitled to any declaratory relief.

25. MMA is unable to admit or deny whether any of the Settlement Holdback Funds have or have not been distributed and is unable to admit or deny LIGA's desires as alleged in Paragraph 20 of the Complaint. Accordingly, MMA denies the allegations contained in Paragraph 20 of the Complaint.

26. MMA lacks sufficient knowledge or information to admit or deny why LIGA seeks the relief requested or whether it purports to act in accordance with the automatic stay under 11 U.S.C. § 362, and therefore denies the allegations in Paragraph 21.

**AUTOMATIC STAY**

27. Paragraph 22 of the Complaint recites statutory language from 11 U.S.C. § 362 and does not contain factual allegations requiring a response. To the extent a response is required, MMA admits that the automatic stay is governed by Section 362 of the Bankruptcy Code.

28. MMA denies the allegations in Paragraph 23 of the Complaint.

29. MMA lacks sufficient knowledge or information to admit or deny what LIGA "believes" concerning the applicability of various subsections of Section 362 and therefore denies the allegations in Paragraph 24.

**PROPERTY OF THE ESTATE**

30. MMA denies the allegations contained in Paragraph 25 of the Complaint.

31. Paragraphs 26 and 27 do not contain factual allegations and instead cite statutory language and case law. To the extent a response is deemed necessary, MMA denies that the statutory citations entitle LIGA to the relief requested.

32. MMA denies the allegations contained in Paragraph 28 of the Complaint.

33. Paragraphs 29 through 33 cite to legal authorities and case law, rather than stating facts. To the extent a response is required, MMA denies that those authorities support the relief LIGA seeks.

34. MMA denies the allegations contained in Paragraphs 34, 35, and 36 of the Complaint.

**COUNT II – PLEADED BY LIGA IN THE ALTERNATIVE – RELIEF FROM THE AUTOMATIC STAY**

35. MMA denies the allegations in Paragraph 37 of the Complaint. MMA further objects to LIGA's incorporation of Paragraphs 1 through 36 by reference, as such incorporation violates Federal pleading standards and improperly aggregates factual and legal allegations previously denied by MMA.

36. Paragraph 38 does not contain factual allegations but merely recites the nature of the relief requested. MMA denies that LIGA is entitled to the relief requested therein.

37. Paragraphs 39 through 42 recite statutory or legal standards without setting forth factual allegations requiring a response. To the extent a response is required, MMA denies that these statements entitle LIGA to the requested relief.

38. MMA denies the allegations in Paragraphs 43 through 46 of the Complaint.

39. MMA admits that certain statements were made by Judges during hearings referenced in

Paragraphs 47 through 49, and asserts that the transcripts speak for themselves. MMA denies that these statements support the relief LIGA seeks and further asserts that the Complaint selectively references these statements and omits context, including other transcript portions and subsequent reversal by the Fifth Circuit.

40. MMA denies the allegations in Paragraph 50. MMA further asserts that the referenced statement was made by a defendant (Morris Bart) in a separate case and constitutes hearsay and false allegations. The mere filing of such statements in a pleading does not establish them as fact.

41. MMA denies the allegations contained in Paragraphs 51 and 52 of the Complaint

42. MMA admits that its representative, Mr. Moseley is the only attorney currently affiliated with MMA. MMA further admits that it has no attorneys presently licensed to practice law in Louisiana. MMA denies the remaining allegations in Paragraph 53, including the conclusion that MMA cannot lawfully collect fees or assert claims arising from Louisiana-based matters or employ Louisiana counsel.

43. MMA admits that it has stated it does not intend to intervene in pending litigation in Louisiana. MMA denies that this statement waives the estate's rights to fees or legal interests. MMA also denies that the "Foskey order" referenced in Paragraph 54 is binding, as it was entered without due process following and as a result of an *ex parte* proceeding conducted without notice or participation from MMA where the judge in the case acted as the mediator without MMA's presence or participation.

44. MMA denies the allegations in Paragraph 55 and further denies that LIGA is entitled to any of the relief requested in the "Wherefore" clause of the Complaint or elsewhere.

## **COUNTERCLAIM NO. 1: TURNOVER OF ESTATE PROPERTY**

**Relevant Background Facts**

45.     MMA brings this counterclaim under 11 U.S.C. § 542(a), seeking immediate recovery of funds that are property of the bankruptcy estate.

46.     On April 9, 2024, MMA filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas.

47.     MMA remains a debtor-in-possession and retains all legal and equitable rights under 11 U.S.C. §§ 541 and 542 to pursue and recover estate property.

48.     Prior to filing bankruptcy, MMA earned attorney's fees under contingency fee agreements with thousands of clients for insurance litigation related to hurricane property damage.

49.     MMA filed thousands of lawsuits on behalf of these clients, exposing widespread underpayment of insurance claims that threatened hundreds of millions of dollars in insurer liabilities.

50.     The volume of litigation significantly impacted the insurance market and created a systemic risk of insolvencies, which in turn threatened the Louisiana Insurance Guaranty Association (**"LIGA"**) and the Louisiana Department of Insurance (**"LDI"**).

51.     LDI had a vested interest in stopping MMA's litigation activity to avoid insurer withdrawals and broader market destabilization.

52.     As MMA's litigation grew, the pressure on LDI increased. In response, LDI initiated enforcement actions against MMA.

53.     On February 17, 2023, LDI issued a cease-and-desist order against MMA (the **"Cease and**

Desist Order").

54. On May 1, 2023, LDI issued a $500,000 sanctions order against MMA (the **"Sanctions Order"**).

55. MMA appealed both Orders.

56. On January 31, 2025, both Orders were reversed by a higher court, which found LDI lacked jurisdiction and rejected its legal arguments.

57. These regulatory actions appear to have been part of a retaliatory effort by LDI to suppress litigation that exposed systemic industry issues, ultimately contributing to MMA's financial distress and bankruptcy filing.

58. Both before and after the bankruptcy filing, LIGA settled hundreds of cases originally filed by MMA.

59. In cases where MMA's clients had not retained new counsel, LIGA withheld 25% of the settlement proceeds, representing MMA's contractual attorney's fees, as **"Settlement Holdback Funds."**

60. LIGA distributed 75% of each settlement to the client and retained the remaining 25% in its trust account without justification, even though there was no objection by the client and no new attorney involved.

61. On April 25, 2024, MMA provided LIGA with formal notice of its bankruptcy and detailed MMA's claim to the Settlement Holdback Funds, including an extensive spreadsheet identifying all affected cases **(Exhibit A)**.

62. Despite this notice, LIGA has refused to remit the withheld funds to the estate. Instead, the funds remain in LIGA's trust account.

63. On June 23, 2025, LIGA initiated this adversary proceeding, even though MMA's clients did not request or authorize such action.

64. In its Complaint, LIGA seeks:

a) A declaration that the Settlement Holdback Funds are not estate property under § 541(a)(1);

b) A finding that distribution of those funds to MMA's clients would not violate § 362(a); and

c) Authority to continue similar payments in other cases. Alternatively, LIGA requests stay relief.

65. LIGA has admitted to MMA that no client requested this action or directed LIGA to withhold MMA's share of attorney's fees.

66. MMA offered a neutral resolution, deposit of the funds into the Bankruptcy Court registry. LIGA refused.

67. LIGA admits in its Complaint that it is holding $913,574.25 in connection with 188 cases in its trust account. **(Exhibit B)**

68. MMA is uncertain whether additional funds have been withheld. MMA demands a full accounting of any funds retained by LIGA related to other cases where MMA represented clients.

**Legal Basis for Turnover**

69. Under § 541(a), the bankruptcy estate includes all legal and equitable interests of the debtor, including earned attorney's fees under contingency agreements.

70. Under § 542(a), any entity holding property of the estate must deliver and account for such property.

71. As of June 12, 2025, LIGA is in possession of at least $913,574.25 in Settlement Holdback Funds.

72. These funds represent MMA's earned fees from 188 cases where no new attorney was retained prior to settlement.

73. LIGA has no lien or interest in the Settlement Holdback Funds.

74. MMA's clients did not instruct LIGA to withhold the fees or to initiate this adversary proceeding.

75. MMA believes that there may be additional funds in other cases that have not been disclosed.

76. The withheld Settlement Holdback Funds are not of inconsequential value. Nearly $1 million is being improperly withheld, funds that could pay estate creditors.

77. MMA requests a full accounting and immediate turnover of all funds, including but not limited to the 188 identified cases.

78. The Settlement Holdback Funds are indisputably property of the estate under § 541.

79. Their retention impairs the estate's ability to satisfy claims and violates the estate's right to control its assets.

## COUNT II – VIOLATION OF THE AUTOMATIC STAY

80. The automatic stay prohibits acts to exercise control over estate property (§ 362(a)(3)).

81. MMA retains legal and equitable interests in attorney's fees in hundreds of cases pursuant to contingency fee agreements, which are property of the estate.

82. After MMA's bankruptcy, successor attorneys, including Broussard & Dove (**"B&D"**), took over representation of former MMA clients in pending insurance litigation.

83. On January 31, 2025, MMA sued B&D in *Adv. No. 25-03021* (the "Broussard Litigation")

for turnover and equitable division of fees under *Saucier*. **(Exhibit C)**

84. MMA and B&D attempted to resolve disputes through a Stipulation allowing settlement of client's underlying claims, with attorneys' fees held in trust pending resolution. This would allow the clients to be paid immediately. These efforts failed so far, in part due to LIGA's interference.

85. On July 15, 2025, B&D emailed MMA stating:

> "LIGA's withholding of funds pending a resolution as to MMA's entitlement to claimed fees or expenses makes compliance with the Stipulation nearly impossible and would likely render it impossible to settle the pending LIGA claims." **(Exhibit D)**

86. On November 22, 2025, the Galindo Law Firm, another successor firm, reported to MMA that: "LIGA cancelled another mediation today because it refused to put MMA on a check." **(Exhibit E)**

87. These communications confirm that LIGA is conditioning settlement or mediation on MMA being excluded from payment, even though MMA has a prepetition right to fees.

88. These acts occurred post-petition and were directed at successor law firms currently representing MMA's former clients where MMA has a claim for reimbursement of fees and costs.

89. LIGA's conduct is a post-petition act to control estate property and to interfere with MMA's ability to recover fees.

90. LIGA's pressure tactics, including conditioning settlement on MMA's exclusion, violate § 362(a)(3).

91. This conduct has materially harmed the estate's ability to resolve disputes, collect assets, and administer claims.

92. Accordingly, MMA seeks relief under § 362(k) and § 105(a) for willful violation of the automatic stay, and seeks attorney's fees and costs.

**PRAYER FOR RELIEF**

93. WHEREFORE, MMA respectfully requests that this Court enter judgment in its favor and:

**Turnover and Accounting**

a) Order LIGA to provide a full and complete accounting of all funds it has withheld in cases involving MMA, including but not limited to the 188 cases identified in its Complaint in the attached *Exhibit B*;

b) b) Direct LIGA to immediately turn over to the estate all Settlement Holdback Funds in its possession, including any additional amounts identified through the required accounting, pursuant to 11 U.S.C. § 542(a);

**Automatic Stay Violation**

c) Find that LIGA's conduct described in Count II violates the automatic stay under 11 U.S.C. § 362(a);

d) Award appropriate sanctions or other relief under § 362(k) and/or § 105(a), including attorneys' fees and costs incurred in addressing the stay violation;

**Other Relief**

e) Deny all relief requested by LIGA in its Complaint;

f) Grant such other and further relief as the Court deems just and proper.

Dated: <u>July 22, 2025</u>

Respectfully submitted,

By: /s/ *Johnie Patterson*
Johnie Patterson
Attorney-in-charge
SBN 15601700
COUNSEL FOR MMA

OF COUNSEL:
Walker & Patterson, P.C.
P.O. Box 61301
Houston, TX 77208
(713) 956-5577 (telephone)
jjp@walkerandpatterson.com

## CERTIFICATE OF SERVICE

I, Johnie Patterson hereby certify that a true and correct copy of the foregoing Motion and Answer were served on all counsel via the Court's CM/ECF service platform on July 22, 2025.

By: /s/ *Johnie Patterson*
Johnie Patterson